UNITED STATES FIDELITY AND GUARANTY COM-
PANY *v.* SEXTON, receiver.

The court committed no error in overruling the demurrers to the petition.

FEBRUARY 18, 1910.

Action upon bond. Before Judge Pendleton. Fulton superior court. December 10, 1908.

The defendant in error, as receiver of the Atlanta-Birmingham Fire Insurance Company (hereinafter called the insurance company), brought suit against the plaintiff in error (hereinafter called the surety company) on a bond signed by it on October 21, 1905, as surety of Watson, Taylor, and Sperry, who had, on August 18, 1905, been appointed general agents of the insurance company at San Francisco, Cal. The petition alleged that the surety company executed its bond "to make good and reimburse said insurance company to the extent of $5,000, subject to certain terms and conditions, as will fully appear from a copy of said bond or indemnity contract," a copy of which was attached to the petition. The petition further alleged that the insurance company sustained a pecuniary loss of moneys amounting to $5,000, which loss was occasioned by the larceny or embezzlement of the agents in connection with the duties "of office and position in the service of the insurance company," and that the insurance company has performed "all and singular the conditions and obligations to be performed by it as set forth in said bond." The bond on which the suit was brought recited that "Kenneth Watson, Churchill Taylor, and George B. Sperry, doing business as Watson, Taylor & Sperry, hereinafter called the employee, has been appointed to the position of general agents for Pacific coast territory in the service" of the insurance company, and has been "required to furnish a bond for his honesty in the performance of his duties in said position." The bond had in it the following provisions: "It is hereby agreed and declared, that subject to the provisions and conditions herein contained, which shall be conditions precedent to the right on the part of the employer to recover under this bond, the company shall, at the expiration of three months next after proof of a loss as hereinafter mentioned has been given to the company, make good and reimburse to the employer to the extent of the sum of five thousand dollars, and no further, all and any pecuniary loss sustained by the

employer, of moneys, securities, or other personal property belonging to the employer, in the possession or custody of the employee, or for the possession of which he is responsible, directly occasioned by larceny or embezzlement on the part of the employee, in connection with the duties of the office or position in the service of the employer, . . this bond being intended only to cover such dishonest acts of the employee, in connection with the position in the service of the employer hereinbefore referred to, as amount to larceny or embezzlement, . . it being the true intent and meaning of this bond that the company shall be responsible only as aforesaid, for moneys, securities, or property diverted from the employer through larceny or embezzlement on the part of the employee within the period specified in this bond. . . Provided further, that should the employee become guilty of an offense covered by this bond, the employer will immediately, on being requested by the surety to do so, lay information before a proper officer, covering the facts, and verify the same as required by law, and furnish the company every aid and assistance, not pecuniary, capable of being rendered by the employer his or its agents and servants, which will aid in bringing the employee promptly to justice."

To an amendment to the petition the insurance company attached a copy of the agreement between it and its agents. The place of execution does not appear, but it is recited that the agreement was entered into between the insurance company, "party of the first part, and Watson, Taylor & Sperry, of San Francisco, California, party of the second part." It was further recited: "The party of the first part hereby appoints and constitutes Watson, Taylor & Sperry general agents for the States and Territories now under the jurisdiction of the board of fire underwriters of the Pacific Coast, upon the following terms." The contract further provided that the agents were to have as commissions $37\frac{1}{2}$ per cent. "upon new premiums upon risks covering property located within the territory under their jurisdiction," and a "contingent commission of five per cent. upon the net profits on the business in their territory, to be computed and paid" as specified in the agreement. The contract further provided that the agents were to conduct the business as the insurance company might instruct, and "to forward accounts of all business transacted not later than the 8th of each month, covering the previous month's statement, and to remit balances as

shown within 75 days thereafter." To the petition special and general demurrers were filed, and to the order of the court overruling the same the defendant excepted.

*Smith, Hammond & Smith,* for plaintiff in error.

*Anderson, Felder, Rountree & Wilson,* contra.

HOLDEN, J. (After stating the facts.) The following allegations appear in the original petition: "That, during the continuance of said bond, the Insurance Company sustained a pecuniary loss of moneys belonging to it (said Insurance Company) in the possession and custody of said agents (Watson, Taylor, and Sperry) and for the possession of which said agents were and are responsible, directly occasioned by the larceny or embezzlement on the part of the said agents in connection with the duties of office and position in the service of the Insurance Company, as the same was stated in writing by said Insurance Company to the said Surety Company and discovered during the continuance of said bond. That the said insurance company, on the discovery of said embezzlement, did immediately give notice thereof to the surety company. . . That, although frequently requested so to do, both the said agents and the said surety company have failed and refused to pay the claim of said insurance company against the said agents, or any part thereof, and the said surety company has failed and refused to pay the said insurance company, or to your petitioner, the sum of five thousand dollars ($5,000) named in said bond, or any part thereof."

In an amendment to the petition the following allegations appear: "During the months of December, 1905, and January, February, and March, 1906, said agents collected insurance premiums for and on behalf of the said Atlanta & Birmingham Fire Insurance Company at divers and sundry times, aggregating more than $5,000, all of which insurance premiums they failed to remit to said insurance company, and embezzled, with the exception of $242.99, the aggregate sum embezzled being, as above stated, more than $5,000." It was further alleged that in other specified months during the years 1905 and 1906 the agents collected in cash premiums for and on behalf of the insurance company, amounting in the aggregate to a named sum, "which amount they did fail to remit, and embezzled." After the amendment was filed, the surety company renewed its demurrer, except on specified

grounds thereof.   After this amendment was filed, the surety company demurred on the grounds: "The allegation thereof that the sums therein stated were embezzled expresses a conclusion of the pleader.   What acts were committed constituting embezzlement, as charged in said quotation, are not set forth therein or elsewhere in said petition, and this defendant can not join issue thereon." Another ground of the demurrer was as follows: "What acts were committed constituting the larceny or embezzlement referred to in said paragraph are not set forth therein or elsewhere in said petition, and the allegation in said paragraph that larceny or embezzlement was committed is a conclusion of the plaintiff, unsupported by any allegation of fact."   This demurrer refers to a paragraph of the petition wherein the plaintiff alleged that it "sustained a pecuniary loss of moneys" belonging to it,  .  .  in the possession and custody of said agents (Watson, Taylor, and Sperry), and for the possession of which said agents were and are responsible, directly occasioned by the larceny or embezzlement on the part of the said agents in connection with the duties of office and position in the service of the insurance company."   The allegations of the petition, properly construed, mean that Watson, Taylor, and Sperry, acting as agents of the insurance company, collected for and on its behalf premiums belonging to it, and, after so collecting and refusing to pay them to the insurance company on its request or demand, embezzled them.   The definition of the word "embezzle," according to Webster's International Dictionary, is as follows: "To appropriate fraudulently to one's own use, as property intrusted to one's care; to apply to one's private use by a breach of trust; as, to *embezzle* money held in trust."   When the plaintiff alleged that after collecting certain amounts of premiums belonging to the insurance company, its agents, on its request, failed to pay it the premiums, but embezzled the same, it was the same thing as alleging that the agents, after making such collections, and refusing to pay them to the company on its demand, fraudulently appropriated them to their own use by a breach of trust.   Taking into consideration all of the allegations of the petition, we do not think there was any merit in this ground of the special demurrer.

Another ground of the demurrer was, that "a partnership can not commit larceny or embezzlement."   The plaintiff in error insists, that, under the allegations of the petition, it could not be

liable in damages unless the loss to the plaintiff was occasioned by Watson, Taylor & Sperry as a partnership committing embezzlement; and as a partnership can not commit embezzlement, no liability could rest on the insurance company. There is no merit in this ground of the demurrer. The bond recited that Kenneth Watson, Churchill Taylor, and George B. Sperry, doing business as Watson, Taylor & Sperry, had been appointed to the position of general agents of the insurance company, and the bond was executed by the principals named, both individually and in the partnership name. The parties thus appointed agents were individual principals, against the dishonest acts of either or all of whom, amounting to a breach of the bond, the surety company undertook to indemnify the insurance company.

The surety company further demurred to the petition, "because it is not alleged which member or members of said firm committed larceny or embezzlement of the funds or securities of the said Atlanta & Birmingham Fire Insurance Co., nor what amount of money or securities formed the subject of such larceny or embezzlement by each." We do not think there is any merit in this ground of the demurrer, for the reason that the petition alleged that all three of the agents collected and embezzled the entire amount specified in the amendment to the petition.

The court properly overruled such of the special demurrers as sought to require a more specific statement of the alleged items of loss.

The plaintiff in error contends that its general demurrer should have been sustained, for the reason that the collection of insurance premiums by the agents of the insurance company merely created the relation of debtor and creditor between them, and no use of the money by the agents for their own benefit could amount to dishonest acts amounting to larceny or embezzlement. We can not agree with this contention. It is true that the contract between the insurance company and its agents provided that they were to have a specified commission upon premiums collected, and were to forward accounts of all business transacted not later than the 8th of each month, covering all of the previous month's statements, and to remit balances as shown within 75 days thereafter; but there is nothing in the contract which permits the agents to use any of the premiums belonging to the insurance company for any purpose

whatever, and we do not think that simply the relation of debtor and creditor existed between the agents and the insurance company for the premiums collected belonging to the latter.

Upon the subject generally of the liability of a surety company on bonds containing provisions the same as and similar to those in the bond sued upon in the present case, see Frost on the Law of Guaranty Insurance (2d ed.), § 43.

*Judgment affirmed. All the Justices concur.*