## IN RE RECEIVERSHIP OF ST. PAUL HOME COMPANY.
## W. A. LANG, INC. v. CHASE L. DOBNER.[1]

October 13, 1933.

No. 29,515.

[1]Reported in 250 N. W. 451.

Kerr, Nelson, O'Neill, Mohan & Dudley, for appellant.

Oppenheimer, Dickson, Hodgson, Brown & Donnelly, for respondent.

*HOLT, Justice.*

The appellant, Dobner, is receiver of the St. Paul Home Company, a corporation, in court in process of dissolution. In that proceeding the respondent, W. A. Lang, Incorporated, petitioned for certain relief. It was granted, and the receiver appeals from the order, challenging the findings of fact upon which the order is made.

Respondent, through duly licensed agents, is and for many years has been in the business of writing various forms of insurance as agent for a number of insurance companies. In that business it employed Francis J. Rosenthal as soliciting agent to obtain applications for insurance. Mr. Rosenthal, to facilitate his business, caused the St. Paul Home Company to be incorporated, he being the owner of 248 shares of its total issue of 250 shares of stock. He kept the accounts relating to his insurance business in the books of the St. Paul Home Company, deposited the premiums collected in the bank in its name, and remitted to respondent by checks of the company drawn on its said account. Rosenthal died in August, 1932. His special administrators petitioned for the dissolution of the St. Paul Home Company, and appellant was duly appointed receiver and is so acting. In the dissolution proceeding respondent, W. A. Lang, Incorporated, petitioned the court for the possession of the unpaid premium accounts for policies issued by the agency, on the ground that such accounts were its property and held by Rosenthal as its agent. The court made findings and upon such findings ordered the receiver to turn over to respondent the said uncollected accounts amounting to $3,341.69.

If the evidence supports the findings of fact the order is correct. Six of the eight findings are attacked as not supported by the evidence. The controlling parts of those findings may be thus stated:

That respondent, through its licensed employes, executed, on behalf of its own principals, policies covering risks obtained by Rosenthal for various insureds named in the policies; that it was the duty of Rosenthal to collect the premiums due on such policies and remit the same, less his commission, to respondent; that by reason of the premises Rosenthal was the special agent and fiduciary of respondent, and the premiums on said policies were in fact due to respondent subject to Rosenthal's commission; that between May 1, 1932, and the last of August, 1932, respondent issued through its licensed agents, upon applications procured by Rosenthal, policies of insurance for various persons, the premiums of which, after crediting Rosenthal's commissions, aggregated $3,341.69, which policies were delivered to the insureds and covered sundry risks; that respondent has accounted to the various insurance companies issuing the policies for the full premiums, and has not received from Rosenthal any of the premiums due from the insureds thereon, and such premiums have not been paid by the insureds to anyone; that respondent kept an account in the name of Rosenthal of the policies issued at his request and of the premiums due thereon; but said account was kept as a matter of convenience, as a memorandum account, and that fact, together with the other evidence, fails to establish that the relation of debtor and creditor rather than the relation of agent and principal existed between Rosenthal and respondent, so that the latter was not precluded from collecting directly from the policyholders if it so elected. The court also found that the St. Paul Home Company was at no time the agent of respondent; and that until the status of these outstanding accounts is determined respondent is without adequate remedy to protect itself on the premiums or to realize on the unearned portion of the premiums that remain unpaid either by collection or by cancelation of the policies. The last finding was in substance that said premium accounts are not the property of the St. Paul Home Company, or the receiver, nor are the amounts thereby shown as due and owing from the policyholders for premiums in fact due and owing to said St. Paul Home Company, or to the receiver thereof; but said accounts are

properly the property of respondent, and the amounts shown due thereby from premiums from policyholders and remaining unpaid are in fact due respondent subject only to such commissions thereon as have been earned by Rosenthal as respondent's soliciting agent.

Of the accounts involved, some came into existence after Rosenthal's death, but there was an understanding between respondent and appellant that the insurance business might go on as if Rosenthal were living and conducting it in the manner he had been doing. So we need not consider the legal effect of Rosenthal's death upon the questions presented by the appeal.

It is perfectly plain that if the findings we have summarized are supported by the evidence no other order could be made than the one made. Appellant's position is, in short, that the relation between Rosenthal and respondent, in so far as concerns the accounts now involved, is that of debtor and creditor, and that it is impossible to draw from the evidence any other conclusion. Of course, if in truth and in fact Rosenthal became a debtor to respondent the time an insurance policy procured by the latter was sent to Rosenthal for delivery to the insured, appellant is right. We do not think this is the true situation disclosed by the record. There can be no doubt that Rosenthal was, during all the time in question, the soliciting agent of respondent, the agent of the insurers. As such agent, Rosenthal was charged with the duty of collecting the premiums upon the policies issued upon the applications procured by him and of remitting the same, less his commission, to respondent. Respondent was obligated to account to the insurers for the premiums on the policies issued. The respondent has so accounted for those here involved. So, when Rosenthal delivered the policies mentioned to the insured, he did so as the agent of respondent charged with the duty of collecting and remitting the premiums to respondent. The policies were not sold to Rosenthal and credit extended to him for the premiums. We do not think this agency relation which obtained when the applications for insurance were obtained changed as long as any duty of the agent remained unperformed. The duty to collect and remit the premiums was his.

He has not done so in respect to the premiums in question. No part of the premiums was his except the commission. If a premium was not his property, the account or claim therefor against the policyholder, the insured, was not his. It belonged to the insurer, but became the property of respondent when it accounted to the insurer therefor. The same would have been the case if Rosenthal had remitted or accounted for the premiums. The account against the insured would then be his property, and he could give it to the St. Paul Home Company or dispose of it as he pleased.

Is there anything in the evidence that changed the relation of Rosenthal as an agent of respondent to that of its debtor? Such change could not take place unless with the consent of respondent, the agent's principal. The fact that, under the agency contract, the principal may hold the agent personally liable for the violation of his duties as agent does not change the latter's status as to property of the principal of which the agent was in possession. This record does not disclose that respondent has made any effort to hold Rosenthal or his estate liable for the accounts here involved; nor is there any evidence which calls for a finding that the parties consented to change Rosenthal's relation to respondent from that of an agent to that of a debtor with respect to these accounts. It appears that it was customary to allow Rosenthal 90 days after the delivery of a policy to collect the premium or, if unable to collect, to request a cancelation thereof. In the insurance business, as conducted between subagents, agents, and the insurers, time, varying in length, is allowed for collection and remittance of the premiums. There is testimony that it was needful, for the success of the business, that the soliciting and collecting agent should deal with the insured and not the insurer or the agent for whom the soliciting agent worked. The main item of evidence relied on by appellant is that on respondent's books of account the premium on a policy when sent to Rosenthal for delivery was charged to him. But, considering that the transactions were between agent and subagent in which each was interested in a commission, and that it was necessary to keep records or memoranda thereof so that finally, out

of the collected premiums, each could get the proper share, it must be realized that the manner of the keeping of such books should not be conclusive of their rights. And we think the court could well find that such charges on respondent's account books were merely memoranda of the transactions, kept by respondent in such a manner as appeared most convenient.

In their testimony officers of respondent stated that when policies were delivered to Rosenthal the respondent expected pay for them whether or not the premiums were paid by the insured. Appellant makes much thereof. But if Rosenthal should have neglected to collect or should have ceased faithfully to perform his duty as agent, no doubt respondent could have taken over the collection from the insured or canceled the policies on which premiums were unpaid. The only case called to our attention which may be said to be in point is Alliance Ins. Co. v. City Realty Co. (D. C.) 52 F. (2d) 271, 275, where the insurance company laid claim to the accounts its agent held against the insured for premiums upon policies solicited by the agent and issued in behalf of the company by such agent. In holding that the account or claim for the premium was the property of the insurer, the court stated that, where the agent had a certain time within which to extend credit or make collection, if he exceeded the time so given it worked against the interests of the company, the court saying [52 F. (2d) 275]:

"It is the company's credit and the company's risk which are extended, and after such extension the company has the promise of the insured to pay the premium and also the promise of the agent to pay the premium less his commission. The company then depends upon the agent as agent to collect the money from the insured and remit the 'balance' within the sixty-day period or, if he fails to collect as agent, then, as independent promisor, to remit the 'balance' in discharge of his separate, original undertaking. If the agent, both as agent and as independent promisor, fails to remit and his agency is terminated, the company has a valid claim against both the insured and the independent promisor. The company may proceed against either or both until its claim is satisfied. If it can-

not obtain the 'balance' from the independent promisor, it may take charge of the account, collect it, or as much of it as is collectible, and credit the 'balance' with the proceeds."

To the point that the claim or account against the insured for the premium due on a policy is the property of the insurer, or, as here, the property of respondent, who accounted to the insurers for the premiums, may be cited Hoidale v. Cooley, 143 Minn. 430, 174 N. W. 413; U. S. F. & G. Co. v. Sexton, 134 Ga. 56, 67 S. E. 649; Williams v. S. M. Smith Ins. Agency, 75 W. Va. 494, 84 S. E. 235, Ann. Cas. 1917A, 813.

Counsel for appellant cite and rely on Williams v. Empire Mut. A. & L. Ins. Co. 8 Ga. App. 303, 68 S. E. 1082; White v. Connecticut F. Ins. Co. 120 Mass. 330; Perea v. State L. Ins. Co. 15 N. M. 399, 110 P. 559; Buckley v. Citizens Ins. Co. 188 N. Y. 399, 81 N. E. 165, 13 L.R.A.(N.S.) 889; Lebanon Mut. Ins. Co. v. Hoover, Hughes & Co. 113 Pa. 591, 8 A. 163, 57 Am. R. 511; Wytheville Ins. & B. Co. v. Teiger, 90 Va. 277, 18 S. E. 195; Fidelity & Cas. Co. v. Willey (C. C. A.) 80 F. 497. All relate to controversies in respect to the liability of the insurer to the insured under the terms of the policy. It is readily seen that an insurer may, by the manner in which it permits the agent to do business with the insured, waive a condition in the policy that a premium must be paid in cash, before the policy takes effect, or similar provisions, or permit the agent to give credit to the insured.

In our opinion the findings challenged are sustained, and the order based thereon is warranted under the law. The unpaid premiums upon the policies held by the insured persons procured by Rosenthal belonged neither to him nor to the St. Paul Home Company nor to its receiver, but to the companies carrying the insurance risk; and respondent, by accounting to the companies for the premiums, acquired the companies' interests thereto and to the accounts or claims accruing therefrom against the holders of such policies.

The order is affirmed.